IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLAUDINE J. WILSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-21-103-SPS |

**OPINION AND ORDER**

The claimant Claudine J. Wilson, proceeding pro se, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-three years old at the time of the administrative hearing (Tr. 35). She completed the eleventh grade, and has previously worked as a home health aide, housekeeper, dishwasher, and cook's helper (Tr. 36, 44-45, 201). The claimant alleges that she has been unable to work since April 14, 2017, due to type II diabetes, high blood pressure, high cholesterol, manic depression, personality disorder, panic attacks, migraines, crystals in her kneecaps, bipolar disorder, schizophrenia, neuropathy in both hands and legs, and GERD (Tr. 11, 200).

### Procedural History

On June 13, 2019, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ David Page conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 28, 2020 (Tr. 11-20). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of work

at all exertional levels, but that she could only frequently climb ramps/stairs, balance, kneel, crouch, and crawl, and she could not climb ladders/ropes/scaffolds and must avoid any contact with hazardous machinery or unprotected heights. Additionally, he found she could understand, remember, and perform simple, routine (one- to two-step) tasks; occasionally interact with supervisors and co-workers, providing there were no tandem/coordinated work tasks; and she could not interact with the general public (Tr. 15). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a housekeeper or dishwasher (Tr. 19-20).

## Review

The claimant, proceeding pro se, contends that she is unable to work due to physical and mental health problems including knee pain; back pain when bending, squatting, or standing, and when doing housework; and difficulty being around crowds. Liberally construing the claimant's assertions,[3] the Court interprets them as contentions that the ALJ failed to properly assess her RFC and in accounting for her subjective symptoms. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of type II diabetes with neuropathy, arthritis, obesity, schizophrenia, bipolar disorder, and depressive disorder, as

---

[3] "When a party proceeds pro se, a court construes his or her pleadings liberally and holds them 'to a less stringent standard than [that applied to] formal pleadings drafted by lawyers. [I]f the Court can reasonably read the pleadings to state a valid claim on which [Petitioner] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Barnet v. Marriott*, 526 F. Supp. 3d 1073, 1077 (D.N.M. 2021) (*quoting Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

well as the nonsevere impairments of hypertension and dizziness (Tr. 13-14).  The Court initially notes that the claimant has filed a number of successive applications for disability benefits over the past ten years, none of which has been successful, and that most of the evidence in the record is remote in relation to the present application.  For instance, the record includes a psychological evaluation conducted by T.A. Moeller, Ph.D. on June 11, 2011 (Tr. 311-321).  Upon testing, he stated that the "only reasonable interpretation [] is to opine significant, conscious overendorsement and an attempt to malinger her impairments." (Tr. 317).  In summary, Dr. Moeller noted the claimant had a history as an abuse victim and perpetrator of abuse, but that she was capable of simple tasks, following directions, and of asking and responding to questions (Tr. 317).  He could not identify sufficient indications of valid impairment to find her disabled from working (Tr. 317).  Dr. Moeller assessed her with probable malingering and mood disorder not otherwise specified and continued to rule out personality disorder NOS with antisocial and borderline features (Tr. 317).  Additionally, the claimant sought sporadic mental health treatment over the subsequent years.  A 2012 treatment note includes diagnoses of PTSD, major depressive disorder, and psychotic disorder (Tr. 330).  The claimant was hospitalized for suicidal ideation in June 2013, reporting running out of her medications and experiencing an increase in depression with suicidal ideation and auditory hallucinations (Tr. 397-401).

      The claimant went to Dr. Susan M. Linde, Ph.D., for a mental status evaluation on May 20, 2015 (Tr. 561-567).  Dr. Linde noted that she performed poorly upon exam, with problem areas of judgment, verbal reasoning, and fund of knowledge, but opined that the claimant could perform some work-related mental activities including ability to understand

and remember, but that she would experience difficulty with concentration, persisting with difficult tasks, social interactions, and adapting to the demands of a work environment (Tr. 566). She assessed the claimant with bipolar I disorder and gave her a fair prognosis (Tr. 566-567). Treatment notes from Green Country Behavioral Health in 2015-2017 indicate a diagnosis of either schizoaffective-bipolar type or bipolar disorder, unspecified (Tr. 356, 390).

The more recent medical evidence includes treatment notes from 2018 in which the claimant was not testing her blood sugar regularly but had no musculoskeletal symptoms although she did have symptoms including depression (Tr. 500-502). An April 2019 treatment note for follow up on her diabetes indicates she reported pain at 9/10 and she was positive for blurred vision, but that she had totally normal physical exam findings (Tr. 648-650). The following month, her pain was 0/10 with again normal physical findings (Tr. 654). In July 2019, she reported left wrist and right shoulder pain, but x-rays were normal and she was assessed with tendonitis and tenosynovitis (Tr. 663-677). At a December 2019 visit for right shoulder pain, the claimant was noted to have dizziness and type II diabetes mellitus with hypoglycemia (with long-term use of insulin) (Tr. 701-704).

Treatment notes from Indian River Mental Health Clinic indicate the claimant sought treatment in May 2019 and reported doing well with no new symptoms, although occasionally she would hear voices and possibly see a shadow (Tr. 576).

On September 18, 2019, Dr. John R. Goff, Ph.D., conducted a mental status examination of the claimant (Tr. 696-700). He concluded that the claimant was malingering, in that she was presenting with a "very rare combinations of symptoms that

do not typically exist in nature," and noted that her efforts in malingering were "pretty unsophisticated" (Tr. 699). While he could not rule out a mental or emotional disturbance, his diagnosis was solely malingering (Tr. 699-700). He stated that he thought there was a good probability that she had a personality disturbance but that her level of malingering made it impossible to determine at that exam (Tr. 699).

State reviewing physician R. Glenn Carmichael, M.D. found that the claimant had no exertional limitations, but that she could only frequently climb ramps/stairs, balance, crouch, and crawl, due to her obesity and insulin-dependent diabetes (Tr. 105-106). Additionally, he found that she should avoid concentrated exposure to extreme heat, and all exposure to hazards and unprotected heights (Tr. 106). As to the claimant's mental impairments, Dr. Leslie Rodrigues, Ph.D., found there was insufficient evidence as to the claimant's mental impairments (Tr. 102-104).

At the administrative hearing, the claimant testified that her diabetes is "out of whack," and uncontrolled, causing blackout spells, and that she has a lot of back problems and bursitis of the hips, pinched nerves, and neuropathy in her hands (Tr. 37-39). She testified that medications help manage her impairments some (Tr. 37-38). As to her mental impairments, she testified that she has three personalities that she switches between, and that it happens 27 out of 30 days in a month despite being on medications (Tr. 40). She stated that about half of the time she has her fiancée help her get dressed and comb her hair, and that she only drives occasionally due to the neuropathy in her hands (Tr. 41-42).

In his written decision at step four, the ALJ summarized the claimant's hearing testimony and much of the medical evidence in the record (Tr. 16-19). Specifically, he

noted that most of the evidence in the record was remote in relation to the present application period at issue, but that she had a complicated mental health history that included prior diagnoses of malingering (Tr. 16). He noted that her alleged three personalities were not manifest during the administrative hearing, despite her testifying that they were present 27 out of 30 days in a month (Tr. 16-17). Additionally, he noted she took insulin for her diabetes but no medications for nerve issues (Tr. 16). He further noted Dr. Moeller's 2011 exam and her sporadic mental health treatment, including that she returned to treatment in 2019 (Tr. 17). He found her statements inconsistent with the medical evidence in the record, specifically stating as to her blackouts, back problems, pinched nerve, and neuropathy that the record was "mixed on these issues at best" (Tr. 16-17).

As to the opinion evidence, the ALJ summarized Dr. Gott's report, noting his finding of malingering and that this was longitudinally consistent with existing patterns for the claimant (Tr. 18-19). However, while agreeing that the claimant did not suffer the level of debilitating symptoms she alleged, he found she had focus issues and problems dealing with others in light of her past hospitalizations, a previous ALJ decision, and treatment notes suggestive of a psychological disorder (Tr. 18). As to the remaining opinion evidence, he found Dr. Rodrigues's opinion (that there was insufficient evidence of a mental impairment) unpersuasive and unsupported by the evidence in the record, and that it was not well explained in light of the record. However, he found Dr. Carmichael's physical RFC opinion persuasive, but *added* manipulative limitations based on the entirety

of the record (Tr. 18). He then determined the claimant was able to return to two of her past relevant jobs and was therefore not disabled (Tr. 19-20).

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

The Court finds here that substantial evidence supports the ALJ's determination that the claimant could perform the above-listed RFC. The ALJ specifically discussed and accounted for, *inter alia*, her allegations related to back pain, dizziness, diabetes, and mental impairments in making the determination of her RFC. The longitudinal evidence in the record does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The

ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). *See also* Soc. Sec. Rul. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019) ("We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment.") (emphasis added). Furthermore, the claimant has pointed to no *medical documentation* providing further limitations related to either severe or nonsevere impairments; rather, she simply asserts that her impairments render her disabled. But the claimant has pointed to no evidence other than her own assertions, and the Court therefore declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

As to the evaluation of subjective symptoms, the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we

>   evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4]  Tenth Circuit precedent is in alignment but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[5]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801.  An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

---

[4] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[5] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin,* 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).  The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

      As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. In particular, the ALJ noted inconsistencies between the claimant's subjective statements and the evidence of record related to her dizziness, blackout spells, back pain, and multiple personalities, as well as treatment notes that had largely normal findings. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

      The ALJ specifically noted every relevant medical record available in this case (both inside and outside the eligibility window in this case), gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility

for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

DATED this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**